Good morning. My name is Gary Ting. I'm the attorney representing Mr. Oria. Earlier this court had asked a few questions about the immigration judge to the previous counsel. At practice in Honolulu, we only have one immigration judge. When this case was heard before the judge, her name was Dana Diaz. The day after she got married, her new name is Dana Dima. And she presides over cases in Honolulu and Guam. And at times, she also gets assignments to the mainland. And then there was another question about some of the decisions of the judge is not signed. That is because when she renders a decision, it's all recorded. And when the case is taken on appeal, the recording is transcribed. And at times, the file is sent over to the Board of Immigration Appeal. So she does not have the entire record to look at. And that's the reason she goes, you know, it was reviewed without any previous review of the file. Okay. Thank you. All right. Having said that, my case is a little similar to the first case you heard. But the only difference here we have is the issue of rest judicata. My client was convicted for four offenses prior to 1991. And he went before Judge Williams. Judge Williams terminated the proceedings. And then thereafter, he takes a trip to the Philippines in the year 2002 to attend to his father's funeral. Your client. Correct. And when he was coming back from the Philippines, he was stopped at the airport. And he was placed into this new proceeding along with the prior four convictions. So our position is because Judge Williams did terminate the prior four convictions, that should not have been considered when the judge looked at his application for cancellation. And during the hearing before Judge Beamer, the judge also kind of abused the discretion by going into elements of my client's wife's previous affair. She goes in detail to look at the transcript as to what transpired. And the February 29, 2000 conviction was a result of his wife's affair with someone. And my client started to drink. And he did commit the sexual assault in the fourth degree on the sister of his wife. So my position here is when the judge looked at the cancellation application, she should not have looked at the pre-1991 conviction. But that can't be right. Meaning if the first time around, the proceeding is terminated because there is only one conviction that satisfies the crime involving moral turpitude criteria rather than two. And you need to correct not not in the same transaction. The fact that the thing was terminated because there was only one doesn't mean that that earlier conviction goes away. It's now available assuming he gets another conviction for a crime involving moral turpitude. Yeah, I agree with you. The conviction does not go away. The fact that Judge Williams looked at it and he terminated the proceedings and he leaves the country. Then he comes back in. But Judge Williams terminates it because. Yeah, there was one of the judicial recommendations was one of the reasons. Say again. The judicial recommendation on the conviction. Did the judge come to some decision that it was not a crime involving moral turpitude? To my understanding, you're looking at the record. He did not even go into the analysis of it. That's the point. If that had been determined, then somehow you might be able to use race judicata. But that was what that was not what was determined. Well, your Honor, the notice to appear was filed with the court before the judge. Evidence was presented. And based on what was presented to the court, the judge terminated the proceedings. So we take a position that because the entire case was litigated before the court. He leaves the country. He comes back again. And now he has to re-litigate the entire thing. And he's being prejudiced by the immigration judge. Now Judge Bhima looking at his previous convictions. What about the fourth degree sexual assault? What can you tell us about that? Does that qualify? Your Honor, I believe that falls within the petty exception. It qualifies, but it falls within the petty exception? Correct. Because he was only given 60 days imposteration. And what about the third part of that? The knowingly trespasses on property for the purpose of subjecting another person to surreptitious surveillance for the sexual gratification of the actor. Is that part of it necessarily taking a categorical approach, a crime of moral turpitude? You concede that? I'm throwing a soft pitch. Your answer is yes. Unless there's anything else, I'll resist my time. So applying the categorical approach on this, this seems just perhaps I don't know if any cases does encompass more behavior than what would be a crime of moral turpitude. Was there any evidence in the record from which we could do the modified categorical approach on the nature of that latest 2002 conviction? There was nothing there. I did not see anything. All right. Thank you. You can reserve some time, the rest of your time. May it please the Court, my name is Jennifer Paisner on behalf of the respondent, the United States Attorney General. It's clear, and I think the petitioner has conceded, that the 2000 sexual assault conviction is a crime involving moral turpitude. We cite the cases in our brief. This Court has found that. But you cite no cases as to the third prong. So if we're doing categorical, it has to be a crime of moral turpitude for the third prong of the statute, which is what I'll just call peeping Tomber as part of the statute. So that has to be, that has to be a crime involving moral turpitude. And you didn't cite any cases on that? No, but. Are there any cases on that? Not to my knowledge. There are also no cases that say it isn't. No argument. So when you said you cited cases on this, you really have not cited cases on everything you needed to cite on with respect to crime of moral turpitude on a categorical approach? Well, it's a crime for sexual, the overall crime is sexual assault. And what the courts have found is that. C is not. C is. There's no assault in C. There's no assault in C. It's trespassing. There's no assault. Well, in the definition. It's a crime of privacy, but it's not an assault. Well, the definition equates the purpose of subjecting another person to surreptitious surveillance. How is that an assault? As. Well. What does assault mean? Well, in this definition, it means. The first two involve sort of physical contact. Right. And this definition equates surreptitious surveillance with physical contact. No, it doesn't. It's quite independent. It stands on its own. If you do that, whether or not you even come close to the person, you have violated the statute. You certainly don't have to touch the person or assault the person. The person might not even know you're there. I understand, but my point is that the definition says that is sexual assault. Without. That doesn't answer the question, if you take the categorical approach. Don't we have to look at all three parts and determine whether they. Well, the immigration judge found that they did satisfy it. I didn't see anything in the petitioner's brief arguing that this third prong didn't satisfy the definition. It wasn't a crime involving moral turpitude, which is why, presumably, we didn't address that specific prong in our brief. This is an issue that's sort of been raised for the first time. The immigration judge did make a finding that all three of the prongs. Was it exhausted in front of the BIA? This specific argument with respect to the third prong, no, it wasn't. We've had a recent case come out, Fernandez-Reed, which really makes it clear that we have to look at the full reach of the criminal statute in order to find that it's categorically a crime of, in this case, moral turpitude. And just hypothetically, supposing we were to say, well, C takes it out of that category, are there any documents in the record that we could look at to determine whether, under the modified categorical approach, that this actually was an assault in the common meaning? There are documents in the record that describe what exactly happened. Like the judgment of conviction, the free agreement, things that we're allowed to look at. I have to look again at the record because neither the immigration judge or the board employed the modified categorical approach in this case. That would be an error, of course, because they're supposed to apply it. Well, no, because it was an error because they found under the categorical approach that all three, the immigration judge made a specific finding that all three of the subsections would qualify as a crime involving moral turpitude. So the immigration judge found that it wasn't necessary to employ the modified categorical approach. If this court finds that it's not a crime involving moral turpitude because of this third prong, I would suggest the case has to go back for an analysis under the modified categorical approach. I can tell you there are documents in the record that make it clear that this case involved an unlawful touching. You know, documents that we can consider. Well, that I'm not certain of because the modified categorical approach. It's pretty strict. Well, and it was never, it hasn't been analyzed. If you wait until Judge Fletcher finishes his question, I'll be able to understand your answer. I'm sorry. No, we're doing fine. Why should we conclude as a matter of law that prong three is a crime involving moral turpitude? What's the test? What do we look at? Well, what the courts have held with various sexual assault statutes is that while simple assault isn't a crime involving moral turpitude, where the crime involves an unlawful sexual contact of one sort or another, or as defined in Hawaii, an unlawful sexual keeping, I suppose. You see, but this has nothing to do with an assault in traditional terms. There's no touching on its face. It could occur under circumstances where the victim isn't even aware that the person is there or engaged in this behavior. So it's differentiated from the other. That doesn't mean it's not a crime involving moral turpitude, but it's much different than the ones that have been designated as crimes of moral turpitude. Well, the Hawaii legislature chose to include it in their definition of a sexual assault, which I must assume means that they decided to equate an unlawful keeping episode with an unlawful touching. Here's another kind of bad behavior. We don't like it. We're going to make it criminal. But the question as to how the Hawaii legislature decided to treat it is not the question in front of us. The question in front of us, if we're doing the categorical approach is, is prong C, peeping Tom, is that a crime involving moral turpitude? That's the question in front of us. Well, I would say you could take, well, then you could consider it completely independent of whatever an assault is or isn't, and consider simply whether such conduct is offensive to the community, and I would argue that it is. Now, I don't have any cases at this moment to support that, but crimes involving moral turpitude aren't, the decisions aren't often supported by prior case law. It's sort of a vague what's offensive to the community. We're riding on a clean slate, and your argument would be this is an invasion of somebody's privacy on somebody's property for purposes of sexual gratification. You would argue that's a crime of moral turpitude. I would. What's moral turpitude? Well, the definition is conduct that is offensive. What are the kinds of things that have been determined to be not crimes of moral turpitude that are nonetheless crimes? Simple assault. Simple assault. One of the petitioner's 1987, I believe, convictions was for third degree assault, and it's clear that that is not a crime involving moral turpitude. So it's the sexual gratification aspect that turns it into a crime of moral turpitude. It is, and that's what the courts have held. Is it a crime of mind of the person engaged in the behavior? And the fact that the behavior involves some sort of sexual conduct as opposed, the fact that it involves sexual conduct takes it out of the realm of the simple assault. Well, here's what the BIA has said moral turpitude is. Conduct which is inherently base, vile, or depraved, and contrary to the accepted rules of morality and the duties owed between persons or to society in general. And what we've said it is, is they're per se morally reprehensible and intrinsically wrong. Now I'm going to say, so it is the nature of the act itself and not the statutory prohibition, which renders a crime one of moral turpitude. I'm wondering if this is something the BIA ought to address in the first instance. Well, it may be. I'd like to. I mean the problem is for me is that the case proceeded entirely on the categorical approach. Any other evidentiary records are insufficient under the modified categorical approach. And there seems to be no law on whether peeping toms fall into a moral turpitude category. That I think is correct. I would point out though in this case, the other aspect of this case is the theft conviction. And so I would argue that even putting aside the 2000 sexual assault conviction, the 1987 theft conviction. But you need two. No, you don't need two because what happened in this case, when he was initially charged, he was charged under a ground of deportability that required two. He then left the country and came back in. And the INA provides that if you're a lawful permanent resident but you're returning, you can be charged as being inadmissible if you've committed a crime involving moral turpitude under 212, which is just one. And so either of his 1987 theft convictions qualify as crimes involving moral turpitude. So we can put aside the 2000 assault conviction, just look at the theft convictions. Because he has two, he doesn't fall within the petty offense exception. What 212 says is you need one crime involving moral turpitude. There is a petty offense exception that only applies if you've committed only one crime involving moral turpitude. He has two theft convictions. And neither, reliance on neither of those is barred by either race judicata or collateral estoppel because. I thought we were talking about one theft conviction. Where did we all of a sudden get to two theft convictions? Because you only need one. But the provision of 212 then contains an exception. Yes. And it's called the petty offense exception. And it applies if various preconditions are met, which he meets. But it also says it only applies if you've only committed one crime involving moral turpitude. And then you told me that he's committed two theft crimes. How do you get to two theft crimes? Because he has the two 1987 convictions for theft. They're separate convictions. Now are they arising out of the same transaction? Well, they may be, which is why the immigration judge dismissed the first proceeding. But that is irrelevant for. And the exception for petty does not, doesn't matter that they might have been coming out of the same transaction? No, there's nothing in the petty offense exception, I believe, that says anything about arising out of the same transaction. Okay. All right. You're over your time. Thank you. Can you bring that up? The prong three or prong C was never discussed in the brief. And this is a brief in either side. Either the government or the responder. Well, government references on page 15 or three. But let's not go in detail as to what was done. What I will suggest to the court is to have the board look at it and see what is their position on that. Well, the board looked at it, didn't it? I mean, the board says we agree with the immigration judge that the February conviction under Hawaii law for fourth degree sexual assault constitutes a crime involving moral turpitude. Then footnote one, they quote the statute and it talks about knowingly trespass. Well, the immigration judge basically indicated, yes, this is a crime involving moral turpitude, and she moves on. She does not go into a full analysis of it. Well, did you argue to the BIA that it was not prong three, was not a crime of moral turpitude? I did argue that, yes. Where? Are you sure you argued that? I do recall I did, John, but I'm not exactly aware. Maybe not in detail. Maybe not in detail. Maybe. Maybe not at all. But it's possible. I have nothing else. All right. Thank you very much. Counsel.
judges: Trott Wardlaw W. Fletcher